PEDRO MARÍA ALVAREZ LUGO, Plaintiff and Appellant, *v.* MUNICIPALITY OF AÑASCO, Defendant and Appellee.

No. 5519.   Argued June 26, 1931.—Decided May 25, 1932.

*Horton & Saliva* for appellant.   *M. Figueroa del Rosario* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Pedro María Alvarez Lugo brought suit against the Municipality of Añasco, praying that it be adjudged to remove

an aqueduct which it has on a piece of property belonging to him, or, in default thereof, to pay as damages the sum of $5,000, together with costs and attorney's fees.

As a basis for his claim to relief, he alleged, in short, that he was the owner of a property of 170.54 acres (*cuerdas*), situate in the ward of Humatas, in the municipal district of Añasco, which he had acquired by purchase at a public sale in an action brought by him against the unknown heirs of José R. Alvarez, in 1927, his title thereto being recorded in the Registry of Property of Mayagüez; that, according to his information and belief, about the year 1922, the municipality installed in said property an aqueduct, and located the reservoir thereof on the east of the property, occupying a portion of his land and crossing the same with its pipe line along a distance of 900 meters, partly under the ground and partly on the surface thereof; that said aqueduct was constructed by the municipality without any title or right whatsoever, and the servitude is not recorded in the registry of property; that by reason of such construction—use of the land and flooding thereof—the property, which formerly was worth $12,000, is now worth only $7,000; and that when he purchased the property he had no knowledge of the existence of the aqueduct.

The defendant answered, in brief, admitting that since 1923 it had built and operated an aqueduct to supply water for the municipality, the reservoir thereof being located on a place that adjoins the property of the plaintiff, and a part of the pipe line crossing land pertaining to said property; and it denied that it was without a title, as it had carried out the construction in pursuance of a franchise granted to it, in 1923, by the Public Service Commission, without having to resort to condemnation proceedings for the purpose of laying the pipes through the property involved, because the former owner thereof, José Reyes Alvarez, a brother of the plaintiff who had possession of the same until shortly before the defendant acquired it, gave the defendant authority therefor

without demanding any indemnity from it, which fact was known to the plaintiff, and thus when the plaintiff purchased the property, the servitude in question had already existed as a charge thereon for more than four years.

The answer contains other denials regarding the use of the land, flooding, depreciation, etc., and invokes the apparent character of the servitude which is impugned.

The case went to trial and the court decided it by rendering a judgment against the plaintiff, who has taken an appeal therefrom. He maintains in his brief that the court erred (1) in declaring that the defendant has a title which gives it a right to the servitude; (2) in holding that said title need not appear in a public deed, and that it was valid as against the plaintiff, who is a third person; (3) in declaring that it was fatal for the plaintiff that the easement should be an apparent servitude; (4) in weighing the evidence as to the flooding; (5) in admitting a certain document in evidence; (6) in concluding that the evidence was sufficient to establish the servitude; and (7) in considering the answer as sufficient.

In view of the examination which we have made of the record, we will say, first of all, that the answer is sufficient. The defect it has consists in its being unnecessarily long, but this is no ground for a reversal. Perhaps it would be advisable to say also at the beginning, that we entirely agree with the trial court that the damages were not proved. The plaintiff had alleged that the property was worth $12,000 and that now, because of the depreciation suffered by reason of the aqueduct, it is worth $7,000; yet he himself testified at the trial that he had acquired it for less than its value at present. Having thus cleared the situation, we will proceed to consider the real fundamental question involved in this litigation.

The defendant, in order to prove its title to the servitude, introduced in evidence a copy of the franchise for the construction of the aqueduct, and a writing addressed to it by the residents, Ramón Vélez and José Reyes Alvarez, owners

of lands through which the aqueduct was to pass, stating that, inasmuch as the laying of the pipe line would require the destruction of trees and plantations of difficult valuation, they stood ready to cooperate by ceding whatever portions of the land were necessary, provided the municipality granted to them water for the consumption of their respective homes. One of said residents was the owner of the property involved herein. The rest of the evidence on this point is properly summarized by the trial court in its statement of the case and opinion, thus:

".... and the witness, José R. Vélez, another of the landowners who had ceded land for the laying of the pipes, acknowledged the authenticity of a writing, signed by him and by José R. Alvarez, the previous owner of the property, granting the necessary land in exchange for a free supply of water, and he stated that this was granted to them. This document was also identified by Ramón Calderón, municipal secretary. There was also introduced a copy of the resolution adopted by the council of administration accepting the agreement. The defendant closed its case with the testimony of Antonio González Suárez, who at the time of the construction of the aqueduct and for sometime thereafter filled the office of public service commissioner (mayor). He gave an account of the steps taken by him on behalf of the municipality in connection with the aqueduct in the negotiations with all the landowners affected, especially with José R. Alvarez, the previous owner of said property, and he stated that this gentleman had acceded and consented to all that had been done, had worked on the construction project, and thereafter had continued working on the waterworks as a municipal employee, and had ceded the land gratuitously."

The admission in evidence of the document signed by the residents Vélez and Alvarez was objected to, and forms the basis of the fifth assignment of error, on the claim that it did not appear upon what property the construction had been authorized. The document really does not describe the property, but it furnishes a particular, which added to other data, tends to prove the title of the defendant. There was no error in its admission.

The agreement proposed by the neighbors and eventually entered into, is attacked on the ground that the franchise prohibited the gratuitous grant of water by the municipality. Irrespective of what it may have been said, the grant was not really gratuitous. Indeed, it was made for the purpose of obtaining in exchange what the plaintiff estimates to be worth $5,000.

Therefore, all that the evidence considered as a whole shows is that, in exchange for the water to be furnished from the aqueduct for his home, the owner of the property consented to the construction thereon of any portion of the waterworks that should be necessary; and that the construction had been made since 1923 and still stands, the owner of the property himself having performed labor on the works and continued thereafter as an employee of the municipality assigned to the waterworks. No public instrument was executed, nor, much less, was the servitude recorded in the registry.

In these circumstances, could it be concluded, as the trial court did, that the existence of a valid title in law had been shown? We think so.

Continuous and apparent servitudes, such as an easement of aqueduct, are acquired, according to section 473 of the Civil Code (1930 ed.), by virtue of a title or by prescription after twenty years.

Commenting on section 537 of the former Civil Code, equivalent to section 473 of the present Code (1930 ed.), Manresa says:

"By the word *title* the code refers to the juridical act which gives rise to the servitude, not to the instrument in which such act may have been incorporated. Contrasting the concept of title with that of prescription, the former suggests the express will, whether individual or collective, and the latter the presumptive will.

"In this sense, the title is equivalent to the mode of acquiring and includes all such modes as are provided in sec. 609 of the code, excepting *prescription*, which under sec. 537 comprises a separate group, and *intestate succession*, which does not involve any act of

express will, inasmuch as by virtue thereof, and apart from the proceedings in partition and any contracts that may thereafter be made with reference thereto, existing rights are transmitted but no new ones are created.

"Therefore, the title establishing a servitude, whatever its kind, may be either by law, by gift, by contract, or by will.

"The question is raised as to whether such title should be embodied in a public instrument. In our opinion, the nature of the title should be kept in view.

"It is not to be doubted that a will or a gift of immovables or any real rights therein, require special formalities. As regards the former, even a holographic will, or a will made in imminent danger of death or in time of epidemics, must be incorporated in a public document (secs. 689 and 703). As regards a donation, sec. 633 requires a public instrument for its validity. Can the same be said with respect to contracts? We think that secs. 1278 and 1279, in connection with secs. 1254, 1258, and 1225, are quite explicit. A contract is binding (*válido*), as a general rule, whatever may be the form in which it may have been entered into; if, after its validity has been established by reason of the existence of the consent and the other essential requisites, the execution of a public instrument should be required in any given case, the contracting parties may compel each other to comply with such *formality*. And let it not be argued that something more than a simple obligation is involved, that a real right is being created, because sec. 1095, as in the case of sec. 609, considers the real right as existing from the time of the delivery, and sec. 1464 implies a delivery of incorporeal things from the mere exercise (*uso*) by the vendee of his rights with the consent of the vendor.

"Sec. 1280 of the code provides that there must be reduced to writing in a public instrument: '1. Acts or contracts whose object is the creation, transmission, modification, or extinction of rights which affect real property.' Does this mean that such contracts are not valid if entered into in another form; that they are not binding upon the contracting parties or their heirs? We do not think that that is the effect of the provision." 4 Manresa, Commentaries on the Civil Code, page 594 (second edition, revised).

But it is argued that although this might be so as regards the contracting parties, it is not so as regards the plaintiff, who has the status of a third person. We shall examine the

attendant circumstances and the applicable law and jurisprudence.

In the first place, the district court concluded, in view of the evidence introduced by the defendant, that the plaintiff had knowledge of the existence of the servitude before he acquired the property, as it was shown that the plaintiff served for three years as alderman in the municipality, was a brother of the previous owner of the property, and maintained business relations with him, and had always resided in the municipal district of Añasco, and in such a case, in accordance with the repeated jurisprudence of the Supreme Court of Spain and of this Supreme Court of Puerto Rico, the subsequent purchaser is not a third person.

However, the appellant insists that the above evidence was not sufficient to show the actual notice on the part of the plaintiff, and in this he may be right. Even so, starting as a basis with the showing made in regard to the attendant circumstances, inasmuch as a continuous and apparent servitude is involved, the knowledge is presumed, and the title of acquisition is valid as against the plaintiff, notwithstanding such title is not recorded in the registry.

In the case of *Pagán* v. *Heirs of Rivera,* 38 P.R.R. 583, 585, this Court, speaking through Mr. Justice Texidor, said:

"The servitude in question, as results from the pleadings, is an apparent servitude, as is usually the case with aqueducts. The plaintiff noticed it when making a tour of inspection of the property at a time unknown, because the record does not show the date of the complaint or of its filing to which reference is made in the averment as to when the plaintiff saw the signs of the servitude, but it does show that he made the inspection after his purchase. The servitude being apparent, this gives to it the publicity necessary for not making its record absolutely indispensable, since it is known by reason of its very apparency. See in this connection the judgments of the Supreme Court of Spain of January 11, 1895; March 23, 1906, and April 5, 1898. The legal doctrine of those judgments and others cited by Morell in commenting in vol. 2 of his work on Mortgage Legislation on section 23 of the Spanish Mortgage Law, is that one has not the character of a third party who acquires property legally

encumbered by a servitude whose existence can not be doubted by reason of ostensible and indubitable signs, even though such servitude be not recorded in the registry.''

Although in that case the action was not brought against the municipality but against the vendor of the property, the principles which served to decide it are fully aplicable to the instant case. It would also seem opportune to cite the decision of this Court in the case of *Roman Catholic Church* v. *Combate Tobacco Corp.,* 42 P. R. R. 363. As regards the jurisprudence established by the Supreme Court of Spain, we will only transcribe one of the findings (*considerandos*) contained in the judgment of April 5, 1898, 84 *J. C.* 12. It says:

''Considering that, according to the repeated jurisprudence of this Supreme Court, one has not the status of a third person, for the purposes provided in sections 2, 13, 23, and 27 of the Mortgage Law, invoked in the second ground of this appeal, who acquires property legally encumbered by a servitude the existence of which can not be doubted by reason of ostensible and indubitable signs thereof, even though such servitude be not recorded in the registry, as in such case, the encumbrance being manifest and not hidden, there is a total lack of the reason on which such legal provisions are founded.''

By reason of all the foregoing, and none of the errors assigned by the appellant having been committed, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Wolf dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.

MR. JUSTICE WOLF, dissenting.

In this appeal the Court seems to be saying that in cases of apparent, continuous easements, knowledge of their existence should be presumed. The opinion in *Pagán* v. *Heirs of Rivera* 38 P.R.R. 583, as I read it, does not clearly so decide; nor does Morell; nor yet the Supreme Court of Spain, as cited. What these authorities decide is that in cases of apparent, continuous easements knowledge will be presumed

where the signs (*signos*) of the easements are ostensible and undoubted, "*ostensibles e indubitados.*" I should dissent as a matter of law from a more general proposition.

Assuming that the Court was applying only the principles of the cited authorities, I do not find that the facts of the case constituted the ostensible or undoubted signs (*signos*) of which the jurisprudence speaks. The proof did not satisfy me that the aqueduct was in such plain sight on the supposed servient property as to constitute an exception to the rule that to avail against a third person an easement should be recorded.